I move to the next case on the calendar, which is Ukkel, Inc. v. United States Steel Corporation Mr. Velicky, you've got ten minutes, but you've reserved three minutes for rebuttal. That's right. Thank you, Your Honor. So that gives you seven now. You may proceed. Thank you. May it please the Court, Nicholas Velicky of Herrick Feinstein on behalf of Appellant Plaintiff Ukkel, Inc. Your Honors, the District Court erred in dismissing Ukkel's complaint against U.S. Steel, and particularly by doing so with prejudice. Federal Rule of Civil Procedure 15A2 instructs the courts to freely grant leave to amend when justice so requires. A motion to amend should be denied only if the moving party has unduly delayed... Did you make a motion to amend? We did not, Your Honor. So how can the District Court abuse discretion by not granting a motion that wasn't made? You're saying it was error for the District Court not to sui sponte, grant you an opportunity to amend? Your Honor, in dismissing Ukkel's complaint with prejudice, it prevented Ukkel from moving to amend in response to the decision issued by the District Court. Was there anything in front of the District Court to suggest what would be new in an amending complaint? Your Honor, the District Court did instruct the parties to include in their briefing on U.S. Steel's motion for judgment on the pleadings what could be included in a potential amended complaint. And Ukkel responded to that, but did not respond to every single argument that U.S. Steel made in its briefing. Instead, focused on the... What could you put in the complaint to change the circumstances? I think were Ukkel to move to amend its complaint at this point, giving the opportunity to do so, it would clarify its position with regard to, first of all, its fraud claim, pleading additional facts to... What facts? It would clarify the fact... When you say clarify, I mean, is there something new and different that you would have put into an amended complaint? An amended complaint for Ukkel's, let's take the fraud cause of action. Your argument is that the real estate agreement only referenced maintenance fees and those were the only fees that anyone could have charged Ukkel? That is correct, Your Honor. What could you have added to the complaint to make that a meritorious claim? Your Honor, Ukkel would add the fact that... It couldn't be charged anything else, any other fees by anybody else? Because the Fairless Rail Yard is a privately held rail yard, Your Honor, it was Ukkel's understanding that demerit fees could not be charged for privately owned... That's your argument, and that's the argument you've made. I'm not sure what facts you would be adding to a complaint that would mean that the court would go outside of the language of the contract. So what facts would you be adding? Ukkel would plead that the contract between U.S. Steel and Conrail... ...had no way of learning the substance of outside of disclosure from... Ukkel is in the railroad business, right? No, Ukkel is a real estate holding company, Your Honor. But anyone in the railroad business or abutting the railroad business knows if you leave your trains on the track, you've got to pay demerit, and that's required by federal law. That's correct, Your Honor. However, Ukkel was of the understanding that the Fairless Rail Yard is a privately held, privately owned rail yard, on which demerit fees would not be applicable where privately owned rail cars are stored, for lack of a better word, on those... Is that reasonable in light of the law? I believe so, Your Honor. Didn't we learn that ignorance of the law is no defense in law school? That's right, Your Honor. But in this instance, I don't believe it's ignorance of the law that is the issue. As you noted, Your Honor, Ukkel is aware generally of the concept of demerit. The issue here is the factual question of the nature of the Fairless Rail Yard. It was a privately owned rail yard, but by virtue of the contract between... What is the significance of that, that it's privately owned? Are privately owned rail yards exempted from the requirement that demerits be charged? for privately owned cars. The purpose of demerit, Your Honor, is to compensate a railroad for the deprivation of its assets, be it a rail car or a railroad track. Where private railroad, rail tracks and private rail cars are at issue, the railroad is not being deprived of any of its assets. And therefore, should not be entitled to demerit. And so by dismissing Ukkel's complaint with prejudice, it prevented Ukkel the opportunity to attempt to amend its complaint. Again, while Ukkel set forth, gave a general sense for what it believes it could have done to amend its complaint in response to the argument, excuse me, the pre-motion conference discussion. Why do you think that the real estate agreement could be interpreted to exempt your client from demerit? Well, Your Honor, the real estate agreement, I guess by its terms, would not exempt my client from demerit, but the fact that my client understood the rails to be privately owned, and there's no disclosure of the fact that Conrail was the operator of the rails in the agreement or otherwise, did not give my client notice that it could possibly be subject to demerit fees as a result of its use of the ancillary rights. All right. We've reserved three minutes for rebuttal. Thank you. So we'll hear now from Mr. Plotline. Thank you. Could you address the significance of the fact that it was privately owned? Yes. Good morning, Your Honors, and may it please the Court. Yes, Mr. Bielke raised an argument that the Fairless Rail Yard was privately owned, and they say one case in their brief, the railroad salvage case, and as an initial matter, that court did not hold as a general principle that demerit cannot be assessed to rail cars on private rails. It in fact applied specific terms within the rail carrier's public tariff that exempted from demerit private cars on private rails. And just additionally, U.S. Steel never represented that the Fairless Rail Yard were private rails. They disclosed that the Fairless Rail Yard was operated by Conrail, and then the Pennsylvania District Court, in the underlying litigation, ruled that CSX was required as a matter of law to assess demerit fees to any rails that Conrail owns or operates. Thank you. And going to counsel's argument regarding the maintenance fees, the maintenance fees are for one simple purpose, and that was the agreement was to pay an annual maintenance fee in exchange for U.S. Steel to keep the rails in good working condition. That was it. The absence of a promise, the absence of language regarding demerit fees does not exempt YOCL from paying those fees. The silence is actually precisely the point. Just as U.S. Steel did not disclose, did not represent to YOCL its obligation to pay federal income taxes or real estate taxes, the silence should not be read as an exemption from those fees. I want to turn to the district court's ruling that prejudice, or excuse me, that dismissal of prejudice is appropriate because any proposed amendment would be futile. And although this court will review the lower court's decision in this case, de novo, that does not obviate YOCL's obligation to raise issues at the appropriate time or face waiver. And YOCL waived two issues concerning a second amendment of its complaint. First, YOCL waived the argument that the district court improperly ruled that any proposed amendment would be futile by not challenging that ruling in its principal brief. Its argument was only that it did not get a chance to respond to the substantive deficiencies identified by the district court. Instead, it waited until its reply brief to raise that issue in passing, which means that issue is waived. Second, YOCL also waived the right to argue that the process to amend was insufficient. And again, its position is that it did not receive an opportunity after the district court entered its decision to file a second amendment complaint or move to file a second amendment complaint. But it is black letter law in this circuit that when a district court determines that further amendment of a complaint would be futile, that party does not get a chance to amend. So we have interpreted, or U.S. Steel has interpreted, YOCL's position to mean that it is raising procedural objection to the district court's request at the pre-motion conference for the parties to brief in response to U.S. Steel's motion for judgment on the pleadings whether a second amendment complaint should be permitted. And so to the extent that is their argument, they waived that right to argue it before this court because they did not raise the issue before the lower court. YOCL briefed the issue. It responded, or at least had the chance to respond, to each of U.S. Steel's substantive arguments. And it raised the issue again at oral argument, all without ever arguing or even hinting that the process was somehow insufficient. I want to be sure I understand the background. Who owned the railcars that were on the Morrisville yard and subject to the merge? Yes, your honor. So that arose out of the Pennsylvania litigation, which was several years before this litigation. And so CSX assessed the merge fees against... I'm sorry, I can't hear you. Oh, I'm sorry. CSX assessed the merge fees against YOCL's lessee, B&J Group, over a course of several years. And B&J Group refused to pay those demerge fees. And so CSX sued B&J and the Eastern District of Pennsylvania. And they won summary judgment because the court ruled that CSX is required to assess the merge fees on any rails that Conrail owns or operates. And so to answer your honor's question, there are two rail yards at the Fairless Rail Yard. The one is right outside the rail yard. It's called the Morrisville Rail Yard. And that is owned by U.S. Steel. Or excuse me, that is owned by Conrail. And then within the Fairless Rail Yard, there's a second rail yard that is owned by U.S. Steel but operated by Conrail. And so Conrail operated the rails. And the cars, I believe, were owned by B&J Group. But I cannot say for certain because that issue hasn't been...it's not really at issue in this case. And going back to the futility argument and waiver, just atmospherically before the lower court, Yokel did not attach to its briefing a proposed Second Amendment complaint, which nothing prevented it from doing. Was it required to do that by Judge Matsumoto's rules or by the local rules? No, it is not, your honor. The court directed the parties at the pre-motion conference to simply brief the issue of whether Yokel should be permitted the chance to file a Second Amendment complaint. And so the merits were addressed in the party's briefing and in an oral argument. But the point of my reference to that is that their argument is not very substantive in the opposition brief below. And so I think there were three proposed amendments, which we addressed. But had they filed or attached to their opposition brief a proposed Second Amendment complaint, we could have had a more fulsome argument in response. So to the extent that Yokel is challenging the district court's process for amendment, it waived the right to raise the issue now. But at the end of the day, it doesn't actually matter if Yokel waived these issues or not because substantively it fails. First, Yokel did in fact have an opportunity to address each of the deficiencies identified by the district court because the district court's opinion adopted all of U.S. Steel's main arguments. It had the chance to respond to those arguments below. That it did not sufficiently rebut those arguments does not mean that it should get a third bite of the apple now. Second, the district court correctly ruled that there is no amendment that can cure the substantive deficiencies identified. Nothing can change the clear and express language of the party's contracts. Nothing changes the federal laws and regulations that require a rail carrier to assess the merge fees when the receiver of those rail cars does not order them in time. And nothing changes the fact that U.S. Steel had no duty to inform Yokel of those rules or provide what we understand Yokel's argument to be advisory opinions on how a future court might interpret the party's contracts or the legal implications of the party's contracts. And I say I have a little bit of time left, Your Honors, but if there are no further questions, I will conclude the district court's opinion should be affirmed. Thank you very much, Mr. Potmeyer. We'll hear from Mr. Bielicki again for three minutes of rebuttal. Thank you, Your Honors. Mr. Potmeyer, in his opposition argument, stated that Yokel was on notice that the rails were operated by Conrail. I just want to clarify. While the rail easement makes reference to a maintenance agreement with Conrail, or excuse me, an operating agreement with Conrail, it only mentions this operating agreement in the context of maintenance of the rails. There was no reason for Yokel to understand that there was anything beyond maintenance that would have been at issue in this agreement. There's also reference to CSX. Is it your position that you weren't told about the marriage or that you don't owe the marriage because it's a private yard? I thought I understood, but I'm getting a little confused. I'm sorry, I missed the first part of your question. Is it your position that you just simply don't owe the marriage because it's a private yard, or you don't owe the marriage because you weren't told that this was a possible obligation you were taking on? Your Honor, the Pennsylvania litigation already decided the issue of whether demurrage is supposed to be charged against users of the fareless rail yard. We're not disputing or appealing that decision in the Pennsylvania court. The issue here is whether U.S. Steel should be responsible for the demurrage fees charged to Yokel or its tenants by virtue of the fact that Yokel, going into this real estate agreement, was not given the full set of facts it needed to understand the potential for demurrage fees to be charged. There are important facts in the Code of Federal Regulation about demurrage. Isn't, as Judge Sullivan suggested in an earlier question, isn't your client charged with actual constructive notice of those regulations, of the demurrage regulations?  Your Honor, but again, if we take a step back, Yokel is aware of and has been aware of demurrage fees and the rules relating there too, but it's a matter of the facts concerning... You're saying when you entered these agreements, you weren't specifically told about demurrage fees. You were just told about maintenance fees. In the contract, yes, there was only maintenance fees mentioned. And even though demurrage is something that is charged by statute, it's not something that needs to be disclosed specifically in the agreement or by U.S. Steel, the nature... Well, I thought you were arguing in your brief that you were defrauded because you weren't told specifically about it. You were misled. Yokel was not informed about, I guess, the true nature of the Fairless Rail Yard in that demurrage would have been a potential... It would have potentially been subject to demurrage for using its ancillary rights because the Fairless Rail Yard is a privately owned rail yard. These were, to my understanding, privately held rail cars. It was Yokel's understanding that in that situation, demurrage fees would not be charged for its use of the ancillary rights. So where do you get that understanding from? Which... I'm sorry. That they wouldn't be... Yokel... Where did Yokel derive its understanding that it wouldn't be charged demurrage fees? I don't know specifically, but I think it goes back to the general understanding of the rule. I mean, how can you say you don't know specifically? I mean, what is the allegation that it was somehow misled into thinking that it wouldn't be charged anything other than maintenance? So... I mean, you're up on appeal now, and you're telling us you don't know? I mean, I don't know specifically how my client learned of these... How it learned about demurrage fees generally is the point that I was trying to make there, Your Honors. I think the point that I'm trying to make is that because these were privately held rails, privately held rail yard, Yokel... And you're now conceding that that's a mistaken understanding. You said a moment ago that you're not challenging the Pennsylvania court's decision. No, we're not challenging the Pennsylvania court's decision. So your client had a mistaken understanding regarding demurrage, and the claim is that it was somehow defrauded into having that understanding. It's not a misunderstanding, Your Honor, about the nature of demurrage. It's a misunderstanding about the nature of the fareless rail yard and whether demurrage fees could be charged on those rails. But ultimately, that's going back to the language of the contract, right? I... I mean, what you're really arguing is that this contract covered all fees, and that anything above and beyond what you paid to U.S. Steel would be covered by U.S. Steel. That's really what your interpretation of the contract is, right? Yes, Your Honor, based on the fact... What facts would need to be added to the complaint to give you a viable claim? I don't understand. It's the fact that the rails were privately owned. Demurrage is not to be charged for privately held rails on privately owned cars. You just said a minute ago you lost that in the state court. Yes, but I think the next step to what I'm trying to argue, Your Honors, is that... Are you asking us to revisit that? No, Your Honors. We're not... So you stuck with it? That's correct. It seems like what you're arguing is that you would have added facts to show why it was that you misunderstood the obligations that might be imposed on you or the costs that might be incurred. I believe that's correct, Your Honor. We would need to allege facts to show that... And give us the best facts. Again, it's the fact that the Fairless Rail Yard is a privately held rail yard. These were privately held rail cars at issue. How could you litigate that? How could you add that to a complaint in federal court having lost that issue in state court? But the next step is that U.S. Steel did not disclose the fact that it had this relationship with Conrail, that Conrail was the operator of the rail yard in such a way that would subject the privately owned Fairless Rail Yard to demurrage charges. So you cheated? You defrauded? Where does that all come down? I think it focuses on Yokel's fraud claim in this instance of the fact that the U.S.X. Conrail agreement was not fully disclosed to Yokel prior to the execution of the... These were on-lance bargaining between reasonably sophisticated parties, right? That's right, Your Honor, except... You could have done reasonable due diligence and found that out. That may have been the case, Your Honor, but Yokel had no reason to think that the agreement between Conrail and U.S. Steel that was mentioned in passing in the rail easement concerned anything more than maintenance, which would have been covered by the maintenance fee in the real estate agreement. All right, well, we will reserve the decision. Thank you both.